JOHNSON v PASTORIZA

Docket No. 288338. Submitted April 6, 2010, at Lansing. Decided October 12, 2010, at 9:05 a.m.

Candice Johnson and Baby Johnson, Candice's child who died following its premature birth on November 1, 2005, brought an action in the Jackson Circuit Court against Rajan Pastoriza, M.D., and Rajan Pastoriza, M.D., P.L.C., doing business as Women's First Health Services, alleging medical malpractice and negligence under MCL 600.2922a as a result of defendants' failure to perform a cerclage that Candice requested during her pregnancy with Baby Johnson to prevent the baby's premature birth. The court, Thomas D. Wilson, J., denied defendants' motion for summary disposition and ordered that Candice must have a personal representative appointed for the estate of the deceased child and amend her complaint to bring a claim concerning the child under the wrongful-death act, MCL 600.2922 and MCL 600.2922a. The Court of Appeals granted defendants' application for leave to appeal in an unpublished order, entered February 26, 2009 (Docket No. 288338).

The Court of Appeals *held*:

1. MCL 600.2922, which allows an action for wrongful death, was amended by 2005 PA 270, effective December 19, 2005, to add the language "or death as described in section 2922a" in order to clarify MCL 600.2922 and MCL 600.2922a and to resolve a controversy regarding whether they allow an action brought on behalf of a nonviable fetus. Therefore, MCL 600.2922, as amended by 2005 PA 270, may be applied retroactively from April 1, 2000, the effective date of the last prior amendment of MCL 600.2922 before its amendment in 2005. MCL 600.2922, as amended by 2005 PA 270, retroactively applied in this case.

2. MCL 600.2922 does not require a plaintiff to establish that the injury was caused by an act. Rather, it provides that liability is possible when the injury is caused by wrongful act, neglect, or fault of another. While MCL 600.2922 refers to a death as described in MCL 600.2922a, it does not indicate that the death in question must occur in the manner described in MCL 600.2922a, which refers to wrongful or negligent acts that result in a miscarriage or

stillbirth. Plaintiffs' allegation that defendants caused the injuries when they neglected to perform the requested procedure in a timely manner, when accepted as true, sufficiently established a cause of action under MCL 600.2922.

3. MCL 600.2922a(2)(b) provides that a person is not liable for damages for the death of an embryo or fetus if the death was the result of a medical procedure performed by a physician or other licensed health professional within the scope of his or her practice and (1) performed with the pregnant individual's consent, (2) performed with the consent of an individual who could lawfully provide consent on the pregnant individual's behalf, or (3) performed without consent as necessitated by a medical emergency.

4. The phrase "as necessitated by a medical emergency" in MCL 600.2922a(2)(b) was meant to describe only situations in which consent need not be obtained because of the surrounding circumstances. The trial court erred by interpreting the medical-procedure exception as applying only when the medical procedure was necessitated by a medical emergency. Because consent was not at issue in this case, it was irrelevant whether a medical emergency occurred. MCL 600.2922a(2)(b) clearly provides an exception to MCL 600.2922a if the death of the fetus was the result of the performance of a medical procedure. In this case, however, there was no medical procedure performed, and plaintiffs' claim was based on a failure or refusal to perform an explicitly requested medical procedure. MCL 600.2922a(2)(b) did not apply to the factual allegations in this case.

5. Under MCL 600.2922(2), a wrongful-death action must be brought in the name of the personal representative of the estate. An individual cannot maintain an action in his or her name under the wrongful-death act. Plaintiffs, however, were properly granted leave to amend their complaint so that the action would be brought under the wrongful-death act in the name of the personal representative of the estate of Baby Johnson.

6. The language "or death as described in section 2922a" that was added to MCL 600.2922 in 2005 was added to clarify that a wrongful-death action can be brought not only for the death of a person, pursuant to MCL 600.2922, but also for the death of an embryo or fetus, pursuant to MCL 600.2922a. The Legislature did not intend to supersede the general proposition stated in *McClain v Univ of Mich Bd of Regents*, 256 Mich App 492 (2003), that a plaintiff can bring a cause of action for damages in the plaintiff's own right as a result of a miscarriage in order to recover tort damages. The trial court properly denied defendants' motion for

summary disposition and properly granted plaintiffs an opportunity to amend the complaint to comply with statutory requirements.

Affirmed.

Davis, P.J., did not participate.

1. Statutes — Retroactivity — Wrongful-Death Statute.

MCL 600.2922, as amended by 2005 PA 270, may be applied retroactively to April 1, 2000.

2. Negligence — Wrongful-Death Statute — Embryos or Fetuses — Medical-Procedure Exception.

MCL 600.2922a(2)(b) provides that a person is not liable for damages for the death of an embryo or fetus if the death was the result of a medical procedure performed by a physician or other licensed health professional within the scope of his or her practice and (1) performed with the pregnant individual's consent, (2) performed with the consent of an individual who may lawfully provide consent on the pregnant individual's behalf, or (3) performed without consent as necessitated by a medical emergency.

3. Negligence — Wrongful-Death Statute — Actions — Parties — Claims.

An action under the wrongful-death statute must be brought in the name of the personal representative of the estate of the deceased; the persons who may be entitled to damages under the statute must submit to the personal representative a claim for those damages (MCL 600.2922[7]).

*Ferris & Salter, P.C.* (by *Don Ferris*), for plaintiffs.

*Kitch Drutchas Wagner Valitutti & Sherbrook* (by *Beth A. Wittmann* and *Ellen Keefe-Garner*) for defendants.

Before: Davis, P.J., and Donofrio and Stephens, JJ.

Per Curiam. In this cause of action involving the wrongful-death act, MCL 600.2922 and MCL 600.2922a, defendants appeal by leave granted the trial court's denial of their motion for summary disposition. On appeal,

defendants argue that none of plaintiffs' claims are compensable under the wrongful-death act. We affirm.

## I. SUBSTANTIVE FACTS

As alleged by plaintiffs in their first amended complaint, the medical history of plaintiff Candice Johnson (hereafter Johnson) reflects that her cervix is incompetent. Johnson's incompetent cervix resulted in her having a number of miscarriages. However, in 1999, defendant Dr. Rajan Pastoriza's predecessor, Dr. Dennis Means, performed a cerclage on Johnson when she was 16 weeks pregnant. As a result of the procedure, Johnson's pregnancy proceeded to a full-term vaginal birth in 2000. In 2001, when Johnson was once again 16 weeks pregnant, Dr. Means performed another cerclage, which resulted in that pregnancy reaching 36 weeks. A cesarean section was performed to prevent a breech delivery. In 2002, Dr. Means once again performed a cerclage on Johnson early in the second trimester of a pregnancy. Dr. Means removed the cerclage suture shortly before Johnson vaginally delivered a full-term baby.

Johnson became pregnant again in June 2005. On August 25, 2005, Johnson began receiving treatment from defendant Dr. Rajan Pastoriza and defendant Rajan Pastoriza, M.D., P.L.C. Dr. Pastoriza possessed all of Johnson's previous medical records. An August 25, 2005, note reveals that an ultrasound was scheduled to be conducted at 12 weeks' gestation with a possible cerclage to follow. On September 9, 2005, Johnson appeared at Foote Hospital in Jackson because of vaginal bleeding. An ultrasound was performed, which showed a live fetus at 12 weeks' gestation. Personnel at the hospital recommended bed rest and indicated that Johnson should follow up with her obstetrician.

Johnson followed up with Dr. Pastoriza on September 13, 19, and 23, as well as on October 6. Dr. Pastoriza's records from September and October 2005 continued to note Johnson's history of an incompetent cervix and cerclages.

On October 12, 2005, another ultrasound was ordered because of Johnson's short cervix. The ultrasound revealed a viable fetus at almost 17 weeks' gestation. The findings of the ultrasound also revealed that the length of Johnson's cervix was consistent with the length of Johnson's cervix when the cerclages were performed during her previous successful pregnancies. On October 19, 2005, during an examination by Dr. Pastoriza, Johnson complained of cramping and described a "feeling like pre-term labor." Thereafter, Johnson asked Dr. Pastoriza to perform a cerclage, but he refused to do so.

On November 1, 2005, Johnson went into premature labor, which resulted in advanced cervical dilation. She went to Foote Hospital and was subsequently transferred to Sparrow Hospital in Lansing to receive an emergency cerclage. The emergency cerclage did not prevent the baby's premature birth at 20 weeks' gestation, and, as alleged in the first amended complaint, "Johnson lost the 20 week old fetus shortly after the transfer."

Subsequently, Johnson attempted to have another child and received a cerclage. However, Johnson asserts that as a result of a significant and permanent cervical tear, which she suffered during the emergency cerclage at Sparrow Hospital, the cerclage during this pregnancy failed. Dr. Michael Berke, a board-certified obstetrician, opined that to a reasonable degree of medical certainty, Johnson's cervix would never have been permanently torn if Dr. Pastoriza had timely performed a cerclage in

October 2005. Dr. Berke also opined that to a reasonable degree of medical certainty, Johnson would never have another vaginal birth and that it would be difficult for her to successfully give birth to another child.

## II. PROCEDURAL HISTORY

Plaintiffs, Candice Johnson and Baby Johnson, the child who died following its premature birth on November 1, 2005, subsequently brought suit. Plaintiffs alleged two counts, one of medical malpractice and one of negligence under MCL 600.2922a, which is a portion of the wrongful-death act. MCL 600.2922a(1) provides as follows: "A person who commits a wrongful or negligent act against a pregnant individual is liable for damages if the act results in a miscarriage or stillbirth by that individual, or physical injury to or the death of the embryo or fetus." Thereafter, defendants moved for summary disposition pursuant to MCR 2.116(C)(8) and (10). Defendants moved for summary disposition pursuant to MCR 2.116(C)(8) on the ground that the wrongful-death act allows recovery for the death of a fetus only when "death as described in section 2922a [MCL 600.2922a]" occurs. Defendants asserted that no "death as described in section 2922a" occurred "because § 2922a clearly requires an affirmative act, as opposed to a nonobservable negligent omission that causes a death." In contrast, plaintiffs argued that defendant doctor's refusal to perform the cerclage was an act of commission and, in addition, that MCL 600.2922a ties into the wrongful-death act, which allows actions for the death of a fetus when it is caused by a wrongful act or neglect.

At the September 11, 2008, hearing on the summary disposition motion, defendants also asserted that under MCL 600.2922a(2)(b), acts by medical professionals are

specifically excluded. MCL 600.2922a(2)(b) provides that the section allowing for liability does not apply to "[a] medical procedure performed by a physician or other licensed health professional within the scope of his or her practice and with the pregnant individual's consent or the consent of an individual who may lawfully provide consent on her behalf or without consent as necessitated by a medical emergency." The court said that it interpreted the statute as saying that the provision only applies when the act in question is necessitated by a medical emergency. Defendants argued that the medical-emergency provision relates to the notion of consent and does not apply when a patient is incapable of giving consent. Plaintiffs argued that MCL 600.2922a(2)(b) by its own terms applies to the performance of a medical procedure, but noted that their cause of action was based on the failure to perform a medical procedure.

Defendants also argued that

> to the extent [Johnson] is seeking damages for her own emotional distress under a "bystander" theory for witnessing injury to the fetus, such a claim should be dismissed pursuant to MCR 2.116(C)(8) because it cannot be brought outside the wrongful death act, and because plaintiff failed to allege the elements of such a claim.

The court noted that that argument would cause Johnson to request to amend her complaint, and defense counsel replied that that would be futile because, as just argued, Johnson could not state a wrongful-death claim in light of that act's requirement of a "death as described in section 2922a" in order to recover for the death of a fetus.

Lastly, defendants argued that summary disposition of Johnson's claim for emotional damages for grief and sorrow for her baby's death was proper under the ruling

in *McClain v Univ of Mich Bd of Regents*, 256 Mich App 492; 665 NW2d 484 (2003). Johnson argued that she had also suffered and alleged physical injuries as well as emotional distress. Johnson had alleged that she had an unsuccessful emergency cerclage just before the premature birth. Her attorney told the court that the emergency cerclage ripped, causing physical injury. She also argued that *McClain* did not do away with actions on behalf of a mother because MCL 600.2922a(3) states, "This section does not prohibit a civil action under any other applicable law."

The trial court denied defendants' motion for summary disposition, ruling that Johnson had alleged that she had asked defendant doctor to perform a cerclage, but he did not, and that could be interpreted as an affirmative act. The court also said:

> And taking all the facts in the light most favorable to the plaintiff, I don't believe that I can rule this, as a matter of law, that they cannot develop a cause of action either by amending under 2922a and filing [inaudible] that statute through the Wrongful Death Act, or pursuing, as is now the case, under *McClain*.

Defendants subsequently sought leave to appeal, which this Court granted in an unpublished order, entered February 26, 2009 (Docket No. 288338).

### III. APPLICABLE STANDARDS OF REVIEW

This Court reviews de novo a motion for summary disposition. *Teel v Meredith*, 284 Mich App 660, 662; 774 NW2d 527 (2009). This Court must review the record in the same manner as the trial court to determine whether the movant was entitled to judgment as a matter of law. *Morales v Auto-Owners Ins Co*, 458 Mich 288, 294; 582 NW2d 776 (1998). Although defendants initially brought their motion pursuant to multiple

court rules, it was subsequently conceded that the motion was pursuant solely to MCR 2.116(C)(8). A motion for summary disposition pursuant to MCR 2.116(C)(8) tests the legal sufficiency of the complaint. *Dolan v Continental Airlines*, 454 Mich 373, 380; 563 NW2d 23 (1997). The motion may not be supported with documentary evidence, affidavits, admissions, or depositions because pursuant to MCR 2.116(G)(5), the trial court must only rely on the pleadings. *Patterson v Kleiman*, 447 Mich 429, 432; 526 NW2d 879 (1994). All well-pleaded factual allegations are accepted as true and construed in a light most favorable to the nonmovant. *Wade v Dep't of Corrections*, 439 Mich 158, 162-163; 483 NW2d 26 (1992). However, "the mere statement of a pleader's conclusions, unsupported by allegations of fact, will not suffice to state a cause of action." *ETT Ambulance Serv Corp v Rockford Ambulance, Inc*, 204 Mich App 392, 395; 516 NW2d 498 (1994). A motion under MCR 2.116(C)(8) may be granted only when the claims alleged "are so clearly unenforceable as a matter of law that no factual development could possibly justify recovery." *Wade*, 439 Mich at 163.

Additionally, this appeal requires this Court to consider the meaning of MCL 600.2922 and MCL 600.2922a. The meaning of a statute is a question of law that is reviewed de novo. *Lesner v Liquid Disposal, Inc*, 466 Mich 95, 99; 643 NW2d 553 (2002). As provided in *USAA Ins Co v Houston Gen Ins Co*, 220 Mich App 386, 389-390; 559 NW2d 98 (1996):

> The primary goal of statutory interpretation is to ascertain and give effect to the intent of the Legislature in enacting a provision. Statutory language should be construed reasonably, keeping in mind the purpose of the statute. The first criterion in determining intent is the specific language of the statute. If the statutory language is

clear and unambiguous, judicial construction is neither required nor permitted, and courts must apply the statute as written. However, if reasonable minds can differ regarding the meaning of a statute, judicial construction is appropriate. [Citations omitted.]

If judicial construction is warranted, this Court should construe the statute according to its common meaning, and common sense should not be abandoned. *Jordan v Jarvis*, 200 Mich App 445, 451; 505 NW2d 279 (1993); *Marquis v Hartford Accident & Indemnity (After Remand)*, 444 Mich 638, 644; 513 NW2d 799 (1994). "Terms that are not defined in a statute must be given their plain and ordinary meanings, and it is appropriate to consult a dictionary definition for those meanings." *Hamed v Wayne Co*, 284 Mich App 681, 694; 775 NW2d 1 (2009).

### IV. PLAINTIFFS' CLAIM FOR THE DEATH OF BABY JOHNSON

Defendants first assert that the trial court erred by denying their motion for summary disposition regarding plaintiffs' claim arising out of the death of plaintiff Baby Johnson. We disagree.

Defendants argue that summary disposition should have been granted because plaintiffs cannot state a claim for a "death as described in" MCL 600.2922a. MCL 600.2922(1), as amended by 2005 PA 270, currently provides:

Whenever the death of a person, injuries resulting in death, or death as described in section 2922a shall be caused by wrongful act, neglect, or fault of another, and the act, neglect, or fault is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages, the person who or the corporation that would have been liable, if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured or death as described in

section 2922a, and although the death was caused under circumstances that constitute a felony.

At the time of the alleged negligence in this matter, MCL 600.2922, as amended by 2000 PA 56, was slightly different and did not include the language regarding "death as described in section 2922a." Therefore, before determining whether MCL 600.2922 allows for a recovery in this instance, this Court must first determine which version of that statute applies.

It has been held that in determining whether a statute should be applied prospectively or retroactively, the intent of the Legislature controls. *Frank W Lynch & Co v Flex Technologies, Inc*, 463 Mich 578, 583; 624 NW2d 180 (2001). Specifically, "a statute is presumed to operate prospectively unless the Legislature either expressly or impliedly indicates an intention to give the statute retroactive effect." *Allstate Ins Co v Faulhaber*, 157 Mich App 164, 166; 403 NW2d 527 (1987). However, as this Court has previously explained, the rule that a statute is presumed to operate prospectively

> does not apply to statutory amendments which can be classified as remedial or procedural in nature. Further, a statute which operates in furtherance of a remedy already existing and which neither creates new rights nor destroys existing rights is held to operate retroactively unless a contrary legislative intent is manifested.
>
> A statute is considered remedial or procedural if it is designed to correct an existing oversight in the law or redress an existing grievance. Those statutory amendments which imply an intention to reform or extend existing rights are generally viewed as remedial. [*Id.* at 166-167 (citations omitted).]

In addition, "[a]n amendment *may* apply retroactively where the Legislature enacts an amendment to clarify an existing statute and to resolve a controversy regard-

ing its meaning." *Mtg Electronic Registration Sys, Inc v Pickrell*, 271 Mich App 119, 126; 721 NW2d 276 (2006) (emphasis added).

In this case, it is clear that MCL 600.2922 was amended to add the language "or death as described in section 2922a" in order to clarify both MCL 600.2922 and MCL 600.2922a and to resolve a controversy regarding their meaning. During the discussion of the proposed 2005 amendment of MCL 600.2922 to add the language "or death as described in section 2922a," it was indicated during deliberations in the House of Representatives that MCL 600.2922a had been enacted to "amend the . . . wrongful death statute . . . to extend . . . civil penalties to conduct causing the <u>death</u> of an embryo or fetus." House Legislative Analysis, HB 4777, October 24, 2005, at 1.[1] The House legislative analysis went on to indicate:

> It was believed at the time that [the enactment of MCL 600.2922a] closed the loophole in the wrongful death statute and so would apply to all situations in which conduct toward a pregnant woman resulted in the death of the embryo or fetus she carried.

> However, in subsequent civil actions, courts around the state have apparently only looked at Section 2922 of the wrongful death statute and not Section 2922a. Most notably, in *McClain v University of Michigan Board of Regents*, 256 Mich App 492 (2003), the court held that "under Michigan law, an action for wrongful death, MCL 600.2922, cannot be brought on behalf of a nonviable fetus, because a nonviable fetus is not a 'person' within the meaning of the wrongful-death act."

> Once again, it has become clear that legislation is needed to clarify the legislature's intent of providing a

---

[1] "[L]egislative bill analyses are not official statements of legislative intent" but nonetheless "may be of probative value." *Seaton v Wayne Co Prosecutor (On Second Remand)*, 233 Mich App 313, 321 n 3; 590 NW2d 598 (1998) (citing cases).

cause of action for the wrongful death of not only a person, but also an embryo or fetus. [*Id.* at 1-2.]

On the basis of the foregoing, we conclude that the 2005 amendment of MCL 600.2922, which added the language "or death as described in section 2922a," was enacted in order to clarify MCL 600.2922 and MCL 600.2922a and to resolve a controversy regarding their meaning. Therefore, MCL 600.2922, as amended by 2005 PA 270, which was immediately effective on December 19, 2005, may be applied retroactively from April 1, 2000, the effective date of the last prior amendment of MCL 600.2922 before its amendment in 2005. *Mtg Electronic Registration Sys*, 271 Mich App at 126.

Having determined that MCL 600.2922, as amended by 2005 PA 270, retroactively applies, we must next determine whether defendants' conduct was actionable considering the language of MCL 600.2922a. As noted, MCL 600.2922a provides for liability against "[a] person who commits a wrongful or negligent act against a pregnant individual . . . if the act results in a . . . stillbirth . . . ." Citing that language, defendants argue that plaintiffs are only entitled to relief if they can establish that the injury in question was caused by "a wrongful or negligent act," as opposed to an omission. We disagree with defendants' interpretation of the applicable statutory scheme. Pursuant to MCL 600.2922, a party need not establish that the injury was caused by an act. Rather, MCL 600.2922 specifically provides that liability is possible when the injury is "caused by wrongful act, neglect, or fault of another . . . ." While MCL 600.2922 refers to a "death as described in [MCL 600.2922a]," it does not indicate that the death in question must occur in the *manner* described in MCL 600.2922a. Plaintiffs are alleging that defendants caused their injuries when they neglected to perform

the requested procedure in a timely manner. That allegation, when accepted as true, sufficiently established a cause of action pursuant to MCL 600.2922.

We note that even if we were to agree with defendants' interpretation and conclude that plaintiffs were required to establish that an affirmative act caused the injuries, defendants would still not be entitled to relief. It is improper in this instance to classify defendants' alleged conduct as an omission. The pleadings on which this motion must be considered note that Johnson specifically requested the performance of a cerclage and defendants consciously chose to deny the request. Their conduct in denying the requested care is tantamount to an affirmative act.

In addition to arguing that a cause of action was not permitted because there was no act that led to plaintiffs' injuries, defendants also assert that plaintiffs' cause of action is barred by MCL 600.2922a(2)(b) and that the trial court misinterpreted that statutory provision. While we agree that the trial court's interpretation of MCL 600.2922a(2)(b) was inaccurate, we further conclude that a correct interpretation of that provision does not lead to the conclusion that plaintiffs' action was barred. This Court can affirm a trial court's decision when the trial court reached the correct decision albeit for the wrong reason. *Lane v KinderCare Learning Ctrs, Inc*, 231 Mich App 689, 697; 588 NW2d 715 (1998).

MCL 600.2922a(2)(b) provides that a person is not liable for damages for the death of an embryo or fetus if the death is the result of "[a] medical procedure performed by a physician or other licensed health professional within the scope of his or her practice and with the pregnant individual's consent or the consent of an individual who may lawfully provide consent on her

behalf or without consent as necessitated by a medical emergency." The trial court indicated that it interpreted the medical-procedure exception as applying only when the medical procedure was necessitated by a medical emergency. We disagree. MCL 600.2922a(2)(b) provides three exceptions enumerating when a person is not liable for damages for the death of an embryo or fetus: (1) if the death is the result of "[a] medical procedure performed by a physician or other licensed health professional within the scope of his or her practice and with the pregnant individual's consent," (2) if the death is the result of "[a] medical procedure performed by a physician or other licensed health professional within the scope of his or her practice and with the" consent of an individual who may lawfully provide consent on the pregnant individual's behalf, or (3) if the death is the result of "[a] medical procedure performed by a physician or other licensed health professional within the scope of his or her practice" and without consent "as necessitated by a medical emergency." Thus, the phrase "as necessitated by a medical emergency" is meant to describe only situations in which consent need not be obtained because of the surrounding circumstances. Therefore, because consent is not at issue in the present case, it is irrelevant whether a medical emergency occurred.

MCL 600.2922a(2)(b) clearly provides that there is an exception to MCL 600.2922a if the death of the fetus is the result of the performance of a medical procedure. However, in this case, there was no medical procedure performed. Rather, the claim was based on defendants' failure or refusal to perform an explicitly requested medical procedure. Consequently, we find that MCL 600.2922a(2)(b) is inapplicable to the factual allegations in this case.

V. DAMAGES FOR EMOTIONAL DISTRESS

Defendants next argue that Johnson cannot recover for emotional distress damages because the wrongful-death act only allows for claims brought by a personal representative of the estate of the deceased and does not allow recovery for individual claims. We disagree.

MCL 600.2922 provides, in part:

> (2) Every action under this section shall be brought by, and in the name of, the personal representative of the estate of the deceased. Within 30 days after the commencement of an action, the personal representative shall serve a copy of the complaint and notice as prescribed in subsection (4) upon the person or persons who may be entitled to damages under subsection (3) in the manner and method provided in the rules applicable to probate court proceedings.

> (3) ... [T]he person or persons who may be entitled to damages under this section shall be limited to any of the following who suffer damages and survive the deceased:

> (a) The deceased's spouse, children, descendants, parents, grandparents, brothers and sisters, and, if none of these persons survive the deceased, then those persons to whom the estate of the deceased would pass under the laws of intestate succession determined as of the date of death of the deceased.

> (b) The children of the deceased's spouse.

> (c) Those persons who are devisees under the will of the deceased, except those whose relationship with the decedent violated Michigan law, including beneficiaries of a trust under the will, those persons who are designated in the will as persons who may be entitled to damages under this section, and the beneficiaries of a living trust of the deceased if there is a devise to that trust in the will of the deceased.

\* \* \*

(6) In every action under this section, the court or jury may award damages as the court or jury shall consider fair and equitable, under all the circumstances including reasonable medical, hospital, funeral, and burial expenses for which the estate is liable; reasonable compensation for the pain and suffering, while conscious, undergone by the deceased during the period intervening between the time of the injury and death; and damages for the loss of financial support and the loss of the society and companionship of the deceased. . . .

\* \* \*

(d) After a hearing by the court, the court shall order payment from the proceeds of the reasonable medical, hospital, funeral, and burial expenses of the decedent for which the estate is liable. The proceeds shall not be applied to the payment of any other charges against the estate of the decedent. The court shall then enter an order distributing the proceeds to those persons designated in subsection (3) who suffered damages and to the estate of the deceased for compensation for conscious pain and suffering, if any, in the amount as the court or jury considers fair and equitable considering the relative damages sustained by each of the persons and the estate of the deceased. If there is a special verdict by a jury in the wrongful death action, damages shall be distributed as provided in the special verdict.

\* \* \*

(7) A person who may be entitled to damages under this section must present a claim for damages to the personal representative on or before the date set for hearing on the motion for distribution of the proceeds under subsection (6). The failure to present a claim for damages within the time provided shall bar the person from making a claim to any of the proceeds.

Thus, pursuant to MCL 600.2922(2), an action under the wrongful-death act must be brought in the name of

the personal representative of the estate of the deceased. In addition, although the claim is brought in the name of the personal representative, the persons who may be entitled to damages must submit a claim for those damages to the personal representative. MCL 600.2922(7). The trial court or the jury then awards the amount of damages that it believes is fair and equitable considering the amount of damages sustained by each person and the estate of the deceased. MCL 600.2922(6)(d). Consequently, pursuant to the plain language of the statute, an individual cannot maintain an action in his or her name under the wrongful-death act. MCL 600.2922(2); *USAA Ins Co*, 220 Mich App at 389-390. However, although plaintiffs did not properly bring their claim in the name of the personal representative, but only in the names of Johnson and her baby who died following its premature birth on November 1, 2005, the trial court clearly stated in its order denying defendants' motion for summary disposition that "plaintiffs must appoint a personal representative for the estate of baby Johnson and amend the complaint to bring such a claim through the wrongful death act." Plaintiffs were properly granted leave to amend their complaint. MCR 2.116(I)(5) provides that when summary disposition is sought "based on subrule (C)(8), (9), or (10), the court shall give the parties an opportunity to amend their pleadings as provided by MCR 2.118, unless the evidence then before the court shows that amendment would not be justified." The deficiency in plaintiffs' complaint can be corrected through amendment. Therefore, summary disposition would have been improper.

Finally, defendants also argue that the wrongful-death act is the exclusive remedy in this case because *McClain* was superseded by the 2005 amendment of MCL 600.2922 when that amendment eliminated any

individual claim of a mother outside the wrongful-death act. In the alternative, defendants argue that if *McClain* remains valid, this Court should overrule that decision because it was wrongly decided. We conclude that the holding in *McClain* is still valid, and we refrain from holding that it was wrongly decided.

In *McClain*, 256 Mich App at 496, the plaintiff filed a medical-malpractice action relating to the death of her fetus. The Court indicated that the wrongful-death act, specifically MCL 600.2922, did not apply to the case because MCL 600.2922 dealt with a person and not a nonviable fetus. *Id.* at 495-496. Thus, the Court specifically indicated that the parent in that case could not recover damages for the loss of society and companionship. *Id.* The Court, however, indicated that a "plaintiff's cause of action for damages in her own right as a result of her miscarriage is well grounded in Michigan law" and, thus, that the plaintiff could recover damages that are recoverable in a tort action. *Id.* at 496. The Court went on to conclude that the plaintiff could recover damages for emotional distress, mental anguish, and grief and sorrow. *Id.* at 500-503. Further, other damages would be available to a plaintiff who could prove them, such as damages for physical pain and suffering, fright, shock, denial of social pleasure and enjoyment, embarrassment, humiliation, or other appropriate damages. *Id.* at 498-499.

Defendants' contention that *McClain* was superseded by the 2005 amendment of MCL 600.2922 is without merit. The only language that was added to MCL 600.2922 as a result of the 2005 amendment was the language "or death as described in section 2922a." That language appears to have only been added to clarify that a wrongful-death action can be brought not only for the death of a person, pursuant to MCL

600.2922, but also for the death of an embryo or fetus, pursuant to MCL 600.2922a. There is no indication in the statute or in the legislative history of the enactment of the 2005 amendment of MCL 600.2922 that the Legislature intended to supersede the general proposition that a plaintiff can bring a cause of action for damages in the plaintiff's own right as a result of a miscarriage in order to recover tort damages. Absent any evidence of the Legislature's intent to eliminate a plaintiff's ability to bring such a cause of action, it would be improper for this Court to conclude that *McClain* is no longer good law regarding that point. Furthermore, we are not persuaded by defendants' assertions that *McClain* was incorrectly decided. As a result, defendants are not entitled to relief.

### VI. CONCLUSION

When viewing the evidence in the light most favorable to plaintiffs, we conclude that the trial court properly denied defendants' motion for summary disposition regarding each count of plaintiffs' complaint and properly granted plaintiffs an opportunity to amend that complaint to comply with the statutory requirements.

Affirmed.

DAVIS, P.J., did not participate.