ZAHRA, J.
Candice Johnson suffered a lost pregnancy at 20 weeks’ gestation, and on behalf of herself and the deceased fetus, Baby Johnson, sued Bajan Pastoriza, M.D., and his professional corporation, alleging negligence under MCL 600.2922a, which provides that a person who commits “a wrongful or negligent act *420 against a pregnant individual is liable for damages if the act results in a miscarriage or stillbirth by that individual, or physical injury to or the death of the embryo or fetus,” and medical malpractice. Defendants moved for summary disposition. The circuit court refused to grant summary disposition, but ordered plaintiffs to appoint a personal representative for the estate of Baby Johnson and to amend the complaint to bring the negligence claim that had been brought on behalf of Baby Johnson through the wrongful-death statute, MCL 600.2922. Defendants appealed by leave granted. The Court of Appeals held that MCL 600.2922, as amended by 2005 PA 270, effective December 19, 2005, to incorporate the language “or death as described in section 2922a,” applied retroactively to plaintiffs’ claim for wrongful death, which arose no later than November 1, 2005. The Court of Appeals further held that Pastoriza’s refusal to perform a cerclage was a “wrongful or negligent act” under MCL 600.2922a.
We hold that the 2005 amendment of the wrongful-death statute, incorporating the language “or death as described in” MCL 600.2922a, does not apply to claims arising before the effective date of the amendment. The Legislature only intended the 2005 amendment to apply to claims arising on or after the effective date. Further, because defendants would be subjected to liability that did not exist at the time the cause of action arose, the amendment is not remedial and, therefore, cannot be deemed retroactive. Because the 2005 amendment of MCL 600.2922(1), incorporating “death as described in” MCL 600.2922a, is not retroactive, plaintiffs can only proceed under MCL 600.2922a.[1] In regard to plaintiffs’ claim under MCL 600.2922a, we hold that MCL *421 600.2922a plainly requires an affirmative act and that an omission or refusal to act cannot constitute an affirmative act. We therefore reverse the judgment of the Court of Appeals and remand the case to the circuit court for entry of summary disposition in favor of defendants on the wrongful-death claim.[2]
I. FACTUAL HISTORY
Candice had a history of miscarriages because of an incompetent cervix. Using a cerclage procedure between 13 and 16 weeks’ gestation, however, Candice was able to have three consecutive full-term pregnancies. For her next pregnancy, she saw Pastoriza as her obstetrician. Pastoriza was aware of her success with the cerclage procedure and had removed her cerclage suture shortly before she last gave birth.
In September 2005, Candice experienced vaginal bleeding and went to Foote Hospital in Jackson. Emergency personnel recommended that she rest and meet with her treating obstetrician. A few days later, she saw Pastoriza, but he did not perform a cerclage. At that time an ultrasound showed a live, 12-week-old fetus. On October 12,2005, another ultrasound showed a live fetus at almost 17 weeks’ gestation. The ultrasound also showed that the length of Candice’s cervix was roughly the same as when the previous cerclages had been performed. On October 19, 2005, Candice complained to Pastoriza that she felt preterm, labor-like cramping. She asked Pastoriza to perform a cerclage, but he did not do so. On November 1, 2005, Candice’s cervix dilated and she went into premature labor. She was transferred to Sparrow Hospital in *422 Lansing and received an emergency cerclage, but lost the 20-week-old fetus shortly after the transfer. The failed emergency cerclage also resulted in a significant and permanent cervical tear that might prevent Candice from having another child.
II. LEGAL BACKGROUND
Following amendment by 1985 PA 93, subsection (1) of Michigan’s wrongful-death statute, MCL 600.2922(1), provided that
[w]henever the death of a person or injuries resulting in death shall be caused by wrongful act, neglect, or fault of another, and the act, neglect, or fault is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages, the person who or the corporation that would have been hable, if death had not ensued, shall be hable to an action for damages, notwithstanding the death of the person injured, and although the death was caused under circumstances that constitute a felony.
This version of MCL 600.2922 did not permit a plaintiff to bring a claim for the death of a nonviable fetus because a nonviable fetus was not viewed as a “person.”[3]
In 1998, the Legislature created a new statute, MCL 600.2922a. Section 2922a, which became effective on January 1, 1999, is separate from the wrongful-death *423 statute, and imposes liability for wrongful or negligent acts against a pregnant woman that result in the pregnant woman’s miscarriage or stillbirth or “physical injury” to the fetus. MCL 600.2922a, as added by 1998 PA 2011, provided:
(1) A person who commits a wrongful or negligent act against a pregnant individual is liable for damages if the act results in a miscarriage or stillbirth by that individual or physical injury to the embryo or fetus.
(2) This section does not apply to any of the following:
(a) An act committed by the pregnant individual.
(b) A medical procedure performed by a physician or other licensed medical professional within the scope of his or her practice and with the pregnant individual’s consent or the consent of an individual who may lawfully provide consent on her behalf or without consent as necessitated by a medical emergency.
(c) The lawful dispensation, administration, or prescription of medication.
(3) This section does not prohibit a civil action under any other applicable law.
(4) As used in this section, “physician or other licensed medical professional” means a person licensed under article 15 of the public health code, 1978 PA 368, MCL 333.16101 to 333.18838.
In 2002, the Legislature amended MCL 600.2922a. The amendment extended civil liability to wrongful or negligent acts that caused the “death” of an embryo or fetus and changed the term “medical professional” to “health professional.”[4] MCL 600.2922a, as amended by 2002 PA 164, currently provides:
*424 (1) A person who commits a wrongful or negligent act against a pregnant individual is liable for damages if the act results in a miscarriage or stillbirth by that individual, or physical injury to or the death of the embryo or fetus.
(2) This section does not apply to any of the following:
(a) An act committed by the pregnant individual.
(b) A medical procedure performed by a physician or other licensed health professional within the scope of his or her practice and with the pregnant individual’s consent or the consent of an individual who may lawfully provide consent on her behalf or without consent as necessitated by a medical emergency.
(c) The lawful dispensation, administration, or prescription of medication.
(3) This section does not prohibit a civil action under any other applicable law.
(4) As used in this section, “physician or other licensed health professional” means a person licensed under article 15 of the public health code, 1978 PA 368, MCL 333.16101 to 333.18838.
In 2003, the Court of Appeals addressed a medical malpractice action concerning a miscarriage in McClain v Univ of Mich Bd of Regents [5] In McClain, the mother sought to recover damages for emotional distress resulting from the medical malpractice that had caused the miscarriage.[6] The defendant moved for summary disposition, claiming that the plaintiff was not entitled to recover damages arising from the loss of her deceased fetus.[7] The trial court granted summary disposition, holding that the plaintiff had failed to state a valid medical malpractice claim “with regard to delivery of a *425 nonviable fetus.”[8]
The Court of Appeals reversed.[9] It first noted that a wrongful-death action under MCL 600.2922 could not be brought on behalf of the fetus because the wrongful-death statute applied only to a “person” and the plaintiffs nonviable fetus was not a person.[10] The mother, therefore, could not recover for loss of society and companionship under MCL 600.2922.[11] Significantly, the McClain panel did not recognize or address the import of MCL 600.2922a.
The Legislature amended the wrongful-death statute in 2005 to specifically incorporate and cross-reference MCL 600.2922a. Because of the 2005 amendment, MCL 600.2922(1) currently reads as follows:
Whenever the death of a person, injuries resulting in death, or death as described in section 2922a shall be caused by wrongful act, neglect, or fault of another, and the act, neglect, or fault is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages, the person who or the corporation that would have been liable, if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured or death as described in section 2922a, and although the death was caused under circumstances that constitute a felony. [Emphasis added.]
Public Act 270 of 2005 was signed into law and given immediate effect as of December 19, 2005.
III. PROCEDURAL HISTORY
Plaintiffs filed a complaint against defendants alleging negligence under MCL 600.2922a and medical mal *426 practice. The complaint did not mention wrongful death or MCL 600.2922.
Defendants moved for summary disposition under MCR 2.116(C)(8) and (C)(10). Defendants first argued that plaintiffs could not sustain a wrongful-death claim for a nonviable fetus under MCL 600.2922 because a nonviable fetus is not a person. Defendants also argued that plaintiffs had failed to state a claim under MCL 600.2922a because there was no allegation that defendants had committed an affirmative act.
In response, plaintiffs maintained that the refusal to perform a cerclage was an affirmative act. Plaintiffs further argued that MCL 600.2922, as amended by 2005 PA 270, was inapplicable because the amendment took effect after the instant case arose, stating, “It was not until December, 2005 that the legislature made clear that a cause of action for the death of a fetus under MCL 600.2922a now must be brought as a wrongful death action . . . .” Indeed, they indicated, “[f]or this reason, [p]laintiffs fashioned their complaint on behalf of the fetus under MCL 600.2922a, not under the wrongful death act.” Plaintiffs did posit, however, that “if this Court disagrees, then plaintiff has only to either amend the complaint to add a Count III of wrongful death of the fetus, or bring a separate wrongful death action on behalf of the fetus under MCL 600.2922, and then consolidate.”
Defendants then filed an additional motion for summary disposition. Defendants argued that the 2005 amendment of MCL 600.2922 was retroactive, and by incorporating references to MCL 600.2922a, MCL 600.2922, as amended by 2005 PA 270, requires that a plaintiff establish, in a case in which “death as described in section 2922a” occurs, negligence through an affirmative act.
*427 After a hearing, the circuit court denied defendants’ motions, finding that plaintiffs could develop a cause of action under MCL 600.2922a through the wrongful-death statute or by pursuing a standard medical malpractice claim under McClain. The court reasoned that Pastoriza’s refusal to perform the cerclage after Candice asked for it could be interpreted under MCL 600.2922a as an affirmative act and that the exception for medical providers did not apply. The court also permitted plaintiffs to amend the complaint.
Defendants applied for interlocutory leave to appeal.[12] On leave granted, the Court of Appeals affirmed the circuit court’s decision in a published opinion.[13] Before addressing the substance of plaintiffs’ claims, the Court considered whether MCL 600.2922, as amended by 2005 PA 270, applied retroactively. The Court concluded that the 2005 amendment was remedial and, thus, that the presumption that new statutes only have prospective application was inapplicable. The Court reasoned that the 2005 amendment “was enacted in order to clarify MCL 600.2922 and MCL 600.2922a and to resolve a controversy regarding their meaning.”[14] Having concluded that the amended version of MCL 600.2922 applies retroactively, the Court then rejected defendants’ position that MCL 600.2922a requires an affirmative act in order to establish a claim under the wrongful-death statute for death of a fetus. The Court stated:
*428 Pursuant to MCL 600.2922, a party need not establish that the injury was caused by an act. Rather, MCL 600.2922 specifically provides that liability is possible when the injury is “caused by wrongful act, neglect, or fault of another . ...” While MCL 600.2922 refers to a “death as described in [MCL 600.2922a],” it does not indicate that the death in question must occur in the manner described in MCL 600.2922a. Plaintiffs are alleging that defendants caused their injuries when they neglected to perform the requested procedure in a timely manner. That allegation, when accepted as true, sufficiently established a cause of action pursuant to MCL 600.2922.[15]
The Court reasoned in the alternative that Pastorizad refusal to perform the cerclage constituted an affirmative act.[16] The Court also concluded that the medical provider exception of MCL 600.2922a was inapplicable because no medical procedure had been performed.[17]
Defendants filed an application for leave to appeal in this Court. This Court granted leave to appeal in an order dated March 23, 2011, and directed the parties to brief “(1) whether the 2005 amendment of MCL 600.2922,2005 PA 270, applies retroactively and (2) if so, whether the reference to ‘death as described in section 2922a’ in the 2005 amendment of MCL 600.2922 incorporates the exceptions to recovery contained at MCL 600.2922a(2).”[18]
IV STANDARD OF REVIEW
We review de novo a trial court’s ruling on a motion for summary disposition.[19] Likewise, whether a statute *429 applies retroactively is a question of statutory construction that this Court reviews de novo.[20] Questions of statutory interpretation are questions of law that are reviewed de novo.[21]
V ANALYSIS
A. RETROACTIVITY OF MCL 600.2922(1) AS AMENDED BY 2005 PA 270
Public Act 270 of 2005 took effect on December 19, 2005, and plaintiffs’ cause of action arose on November 1, 2005. Plaintiffs argue that the Court of Appeals was correct in holding that 2005 PA 270 is retroactive and applicable to this case. Plaintiffs argue that the Court of Appeals correctly held that MCL 600.2922 specifically provides that liability is possible when the “death as described in [MCL 600.2922a]” is “caused by wrongful act, neglect, or fault of another.” Thus, plaintiffs need not establish under MCL 600.2922, as amended by 2005 PA 270, that the injury was caused by Pastoriza’s affirmative act.
In determining whether a statute applies retroactively or prospectively, the intent of the Legislature governs.[22] Statutes are presumed to apply prospectively unless the Legislature clearly manifests the intent for retroactive application.[23] This is “especially true when giving a statute retroactive operation will. .. create a new liability in connection with a past transaction, or invalidate a defense which was good when the statute *430 was passed.”[24] Further, “[e]ven if the Legislature acts to invalidate a prior decision of this Court, the amendment is limited to prospective application if it enacts a substantive change in the law.”[25]
While 2005 PA 270 was given immediate effect, nothing in the statutory amendment suggests that the Legislature intended retroactive effect. The phrase “immediate effect” simply refers to Const 1963, art 4, § 27, which provides that “[n]o act shall take effect until the expiration of 90 days from the end of the session at which it was passed, but the legislature may give immediate effect to acts by a two-thirds vote of the members elected to and serving in each house.” (Emphasis added.)[26] Use of the phrase “immediate effect” does not at all suggest that a public act applies retroactively.[27]
As we have noted in other cases, “the Legislature has shown . . . that it knows how to make clear its intention that a statute apply retroactively.”[28] In this case, that the Legislature knows how to do so is palpably demonstrated by considering a previous amendment of the *431 wrongful-death statute. MCL 600.2922, as amended by 1985 PA 93, was ordered to take immediate effect on the date the act was filed, July 10, 1985.[29] In contrast to 2005 PA 270, however, § 2 of 1985 PA 93 expressly provided, in pertinent part, “This amendatory act applies to cases and matters pending on or filed after the effective date of this amendatory act. While the Legislature made clear its intention that 1985 PA 93 take immediate effect on the date it was filed, it also made clear that the amendatory act would be applied retroactively to cases and matters that were pending on the effective date of the amendatory act. We will not ignore that the Legislature did not include language making MCL 600.2922, as amended by 2005 PA 270, retroactive given that a previous amendment of MCL 600.2922 was specifically made retroactive.[30] The Legislature was cognizant of the operative language necessary to apply any particular provision in the amendatory act retroactively but did not include such language in 2005 PA 270.[31] The Court of Appeals improperly held that “MCL *432 600.2922, as amended by 2005 PA 270, . . . may be applied retroactively from April 1, 2000, the effective date of the last prior amendment of MCL 600.2922 before its amendment in 2005.”[32] Had the Legislature intended that 2005 PA 270 apply retroactively, the Legislature could readily have provided that “[t]his amendatory act applies to a cause of action arising on or after April 1, 2000.”
This Court has recognized that “providing a specific, future effective date and omitting any reference to retroactivity supports a conclusion that a statute should be applied prospectively only.”[33] This is akin to what the 2005 amendment of the wrongful-death statute does: it provides a specific effective date, that being the date of filing with the Secretary of State, without the slightest hint of retroactive application. The amendment contains no language suggesting that it applies to an antecedent “death as described in section 2922a.” Therefore, the amended language applies only to injuries occurring on or after the effective date of 2005 PA 270, December 19, 2005.
Acknowledging the absence of statutory language expressing legislative intent to apply the statute retroactively, both plaintiffs and the Court of Appeals’ opinion rely on an “exception” to the presumption that statutes apply prospectively: that “statutes which operate in furtherance of a remedy or mode of procedure *433 and which neither create new rights nor destroy, enlarge, or diminish existing rights are generally held to operate retrospectively unless a contrary legislative intent is manifested.”[34] Simply calling a statute “remedial,” however, is not enough for retroactive application, as we explained in Lynch:
[W]e have rejected the notion that a statute significantly affecting a party’s substantive rights should be applied retroactively merely because it can also be characterized in a sense as “remedial.” In that regard, we agree with Chief Justice Riley’s plurality opinion in White v General Motors Corp, that the term “remedial” in this context should only be employed to describe legislation that does not affect substantive rights. Otherwise, the mere fact that a statute is characterized as remedial is of little value in statutory construction. Again, the question is one of legislative intent.[35]
This exception to the presumption of prospective application for remedial statutes is inapplicable here because the statutory amendment affects substantive rights. Before the 2005 amendment of the wrongful-death statute, a plaintiff could not bring an action under MCL 600.2922 for the death of a nonviable fetus. Nothing in the language of either MCL 600.2922 or MCL 600.2922a indicated that the death of a nonviable fetus could be redressed under § 2922. Under MCL 600.2922, as amended by 2005 PA 270, the representative of the fetus’s estate is now able to file a wrongful-death claim on the basis of the fetus’s death.[36] Addition *434 ally, MCL 600.2922, as amended by 2005 PA 270, permits plaintiffs to bring claims, as the result of the death of a nonviable fetus, for loss of consortium and other damages unique to the wrongful-death statute that plaintiffs would not otherwise be entitled to bring.[37] The 2005 amendment thus affects the substantive rights of those who would harm or kill a nonviable fetus, as well as the substantive rights of those who bring claims on behalf of a fetus’s estate.
Given these considerations, we conclude that the 2005 amendment of MCL 600.2922 does not apply retroactively. The Legislature gave the amendatory act immediate effect without giving any indication that it intended retroactive effect. The amendment affects substantive rights and therefore cannot be given retroactive effect on the basis that it is remedial.[38]
B. VALID CLAIM UNDER MCL 600.2922a
The Court of Appeals held that the circuit court properly denied defendants’ motion for summary disposition under MCR 2.116(C)(8) because Candice alleged that she had “specifically requested the performance of a cerclage and defendants consciously chose to deny the request,” and [t]heir conduct in denying the requested care is tantamount to an affirmative act.”[39] A motion for *435 summary disposition under MCR 2.116(C)(8) tests the legal sufficiency of the complaint.[40] All well-pleaded factual allegations are accepted as true and construed in a light most favorable to the nonmovant.[41] A motion under MCR 2.116(C)(8) may be granted only when the claims alleged “are so clearly unenforceable as a matter of law that no factual development could possibly justify recovery.”[42]
MCL 600.2922a provides:
(1) A person who commits a wrongful or negligent act against a pregnant individual is liable for damages if the act results in a miscarriage or stillbirth by that individual, or physical injury to or the death of the embryo or fetus.
(2) This section does not apply to any of the following:
(a) An act committed by the pregnant individual.
(b) A medical procedure performed by a physician or other licensed health professional within the scope of his or her practice and with the pregnant individual’s consent or the consent of an individual who may lawfully provide consent on her behalf or without consent as necessitated by a medical emergency.
(c) The lawful dispensation, administration, or prescription of medication.
(3) This section does not prohibit a civil action under any other applicable law.
(4) As used in this section, “physician or other licensed health professional” means a person licensed under article 15 of the public health code, 1978 PA 368, MCL 333.16101 to 333.18838.
*436 We must give effect to the Legislature’s intent, and the best indicator of the Legislature’s intent is the words used.[43] We must give every word its plain and ordinary meaning, unless otherwise defined, and may rely on dictionary definitions.[44] If the language is plain and unambiguous, then judicial construction is neither necessary nor permitted.[45]
MCL 600.2922a(l) provides that a person “who commits a wrongful or negligent act” against a pregnant woman is liable for damages if “the act” results in a miscarriage or stillbirth by that individual or physical injury to or the death of the embryo or fetus. The term “act” commonly means “anything done, being done, or to be done[.]”[46] The phrases “wrongful act” and “negligent act” also have plain legal connotations. According to Black’s Law Dictionary, the phrase “wrongful act” is synonymous with the phrase “wrongful conduct,” which means “[a]n act taken in violation of a legal duty; an act that unjustly infringes on another’s rights.”[47] And Black’s Law Dictionary defines “negligent act” as an “act that creates an unreasonable risk of harm to another.”[48] Further, Black’s Law Dictionary compares the phrase, “active negligence,” with the phrase “passive negligence.” The former means “[njegligence resulting from an affirmative or positive act, *437 such as driving through a barrier.”[49] On the other hand, “passive negligence” means “[n]egligence resulting from a person’s failure or omission in acting, such as failing to remove hazardous conditions from public property.”[50] The Legislature clearly intended to impose liability for affirmative or positive acts under MCL 600.2922a(l).
In comparison, it is very clear that the Legislature did not intend to impose liability for omissions, something it can and has done in other statutes.[51] The Legislature did not even include the more expansive terms “neglect” and “fault of another” that it included in MCL 600.2922(1), which permit liability on the basis of omissions. The Legislature’s decision to exclude omissions from MCL 600.2922a indicates that it did not intend to attach liability to omissions that cause prenatal death or injury. To read the phrase “wrongful or negligent act” as including omissions would expand liability under MCL 600.2922a beyond the Legislature’s intent.
In addition, MCL 600.2922a exempts healthcare professionals from liability for medical procedures performed either with consent or under emergency circumstances, and from liability for lawfully dispensing and prescribing medication. It would be incongruous to read the statute as *438 providing liability for negligent omissions when it specifically exempts healthcare professionals from liability for their affirmative acts of commission performed within the scope of their practice under MCL 600.2922a(2)(b). Because the statute specifically requires a wrongful or negligent act, a wrongful or negligent omission does not impose liability under the statute.
In People v Thomas,[52] this Court similarly distinguished between the omission of a duty and an affirmative act. In Thomas, a police officer was charged with crimes related to his falsification of a police report, including common-law obstruction of justice, MCL 750.505. The question presented was whether the trial court erred by dismissing the obstruction of justice charge because the alleged conduct fell within the statutory prohibition of failing to uphold the law, MCL 752.11.[53] The relevant statute, MCL 752.11, provided:
Any public official, appointed or elected, who is responsible for enforcing or upholding any law of this state and who wilfully and knowingly fails to uphold or enforce the law with the result that any person’s legal rights are denied is guilty of a misdemeanor.
Just as in this case, the Thomas Court found it necessary when reading the relevant statute to “distinguish between the omission of a duty and affirmative acts.”[54] We concluded that MCL 752.11 “proscribes the wilful and knowing failure to uphold the law, acts of omission.”[55] We also unanimously concluded that falsifying a police report is clearly an act of commission, not an act of omission.[56]
*439 Under the analytical framework laid out in Thomas, even assuming that defendant “refused” to perform a procedure,[57] his refusal still could not be characterized as anything other than “wilful and knowing failure to [do something],” language which this Court in Thomas unequivocally construed as an act of omission.[58]
Moreover, we cannot accept the dissent’s conclusion “that an active decision-making process clearly involves an affirmative act.”[59] This conclusion morphs all willful omissions into commissions. And even assuming that Pastoriza did refuse to perform a cerclage, his words of refusal did not create any risk of harm. Rather, as plaintiffs claim, it was Pastoriza’s failure to perform a medical procedure that caused the harm, and this alleged failure cannot be reasonably characterized as an affirmative act. The dissent’s conclusion that Pastoriza committed an “act” when he “refused to act” is untenable. A refusal to act is to abstain from action and, therefore, cannot reasonably be considered an act. In sum, the dissent distorts the express language of MCL 600.2922a, obliterates the long-recognized distinction between the omission of a duty and affirmative acts, and improperly equates saying “no” with an affirmative act.
Viewing the pleadings in a light most favorable to plaintiff and accepting each and every factual allegation as true, Pastoriza’s act was, at most, an omission. Consequently, plaintiffs have failed to state a claim *440 under MCL 600.2922a because defendants did not commit a “wrongful or negligent act.” Therefore, the trial court erred by denying summary disposition to defendants.
VI. CONCLUSION
In sum, we hold that the 2005 amendment of MCL 600.2922(1) does not have retroactive application because (1) the Legislature failed to give any indication that retroactive application was intended, and (2) the amendment affects substantive rights and cannot be given retroactive application on the ground that it is remedial. Therefore, plaintiffs may not proceed under MCL 600.2922. Further, we hold that the text of MCL 600.2922a provides liability only for affirmative acts and does not encompass omissions. In this case, plaintiffs have only alleged an omission or failure to act by defendants; therefore, plaintiffs have failed to state a claim under MCL 600.2922a. We therefore reverse the judgment of the Court of Appeals and remand the case to the trial court for the entry of partial summary disposition in favor of defendants.[60]
Young, C. J., and Markman and Mary Beth Kelly, JJ., concurred with ZAHRA, J.

 Given this disposition, we do not address “whether the reference to ‘death as described in section 2922a’ in the 2005 amendment of MCL *421 600.2922 incorporates the exceptions to recovery contained at MCL 600.2922a(2).” Johnson v Pastoriza, 489 Mich 856 (2011) (Johnson II).

 This opinion does not affect plaintiffs separate medical malpractice claim.

 In Thomas v Stubbs, 455 Mich 853; 564 NW2d 463 (1997), this Court acknowledged that “[s]ince at least 1975 it has been held that a nonviable fetus is not a ‘person’ within the meaning of the wrongful death act.” Cf. Thomas v Stubbs, 218 Mich App 46; 553 NW2d 634 (1996) (holding that a fetus “born alive,” although not viable, is a “person” within the meaning of the wrongful-death statute). The parties have not asked us to reconsider Thomas and such reconsideration is unnecessary given that the Legislature has since amended MCL 600.2922 and adopted MCL 600.2922a, which specifically imposes liability under certain circumstances for wrongful or negligent acts against a pregnant woman that result in physical injury to or the death of a fetus.

 2001 PA 1 similarly amended the Michigan Penal Code to provide felony penalties for intentional conduct or gross negligence that causes the death of an embryo or fetus.

 McClain v Univ of Mich Bd of Regents, 256 Mich App 492; 665 NW2d 484 (2003).

 Id. at 493-495.

 Id. at 494.

 Id. at 495.

 Id. at 499-500.

 Id. at 495

 Id. at 495-496.

 This interlocutory appeal does not involve Candice’s standard malpractice action.

 Plaintiffs submitted their third amended complaint after the Court of Appeals issued its opinion in this case. The third amended complaint, filed in October 2010, reasserted Candice’s claims of medical malpractice under McClain, her individual negligence claim under MCL 600.2922a, and added a new claim for wrongful death on behalf of the estate of Baby Johnson.

 Johnson v Pastoriza, 290 Mich App 260, 272; 810 NW2d 42 (2010) (Johnson I).

15 Id. at 272-273 (alteration in original).

 Id. at 273.

 Id. at 274.

 Johnson II, 489 Mich at 856.

 Haynes v Neshewat, 477 Mich 29, 34; 729 NW2d 488 (2007).

 Frank W Lynch & Co v Flex Technologies, Inc, 463 Mich 578, 583; 624 NW2d 180 (2001).

 Haynes, 477 Mich at 34.

 Lynch, 463 Mich at 583.

 Brewer v A D Transp Express, Inc, 486 Mich 50, 55-56; 782 NW2d 475 (2010); Franks v White Pine Copper Div, 422 Mich 636, 670; 375 NW2d 715 (1985).

 Hansen-Snyder Co v Gen Motors Corp, 371 Mich 480, 484; 124 NW2d 286 (1963).

 Brewer, 486 Mich at 56, citing Hurd v Ford Motor Co, 423 Mich 531, 533; 377 NW2d 300 (1985).

 We agree with the opinion that a bill passed by the Legislature, given immediate effect in accordance with Const 1963, art, 4, § 27, and signed by the Governor becomes law upon its filing with the Secretary of State. See OAG, 1983-1984, No 6201, p 230 (January 30, 1984).

 Compels Ludka v Dep’t of Treasury, 155 Mich App 250, 260-261; 399 NW2d 490 (1986) (holding that Const 1963, art 4, § 27 does not require the Legislature to pass legislation by a vote in order to make the legislation retroactive).

 Lynch, 463 Mich at 584, citing MCL 141.1157 (“This act shall be applied retroactively ... .”); MCL 324.21301a(2) (“The changes in liability that are provided for in the amendatory act that added this subsection shall be given retroactive application.”).

 Section 3 of 1985 PA 93 conditioned the effective date of the act on the enactment of HB 4486 of the 83rd Legislature. That bill became law 1985 PA 92 and was also filed with the Secretary of State on July 10, 1985.

 We also note that the most recent amendment of another statute relevant to this case, MCL 600.2922a, was also given immediate effect. See 2002 PA 164. Again, that indicates that the Legislature by a 2h vote expressed an intention that the amendatory act take effect on the date it was filed, April 11, 2002. However, within the language of 2002 PA 164 itself the Legislature provided an enacting section that expressly stated that “[t]his amendatory act applies to a cause of action arising on or after May 1, 2002.” While we recognize that the Legislature gave 2002 PA 164 immediate effect and that the amendment was filed on April 11, 2002, we also recognize the Legislature made clear that the amendatory act only applies “to a cause of action arising on or after May 1, 2002.”

 As an additional example, during the 2005 session, the Legislature passed a law providing for limited immunity from civil liability for guardians ad litem. The law specifically provided, in part, that “[a] *432 guardian ad litem is immune from civil liability for an injury to a person or damage to property if he or she is acting within the scope of his or her authority as guardian ad litem.” MCL 691.1407(6), as amended by 2005 PA 318. The law then expressly states that “[t]his subsection applies to actions filed before, on, or after May 1, 1996.” Id.

 Johnson 1, 290 Mich App at 272.

 Brewer, 486 Mich at 56, citing White v Gen Motors Corp, 431 Mich 387, 398-399; 429 NW2d 576 (1988) (opinion by Riley, J.) (quotation marks omitted).

 Lynch, 463 Mich at 584 (citations and quotation marks omitted).

35 Id. at 585 (emphasis added; citations and quotations marks omitted; formatting altered).

 The pregnant woman appears to have a cause of action in her own right under MCL 600.2922a. Under § 2922a, a defendant is liable for damages if his or her acts resulted in a “miscarriage or stillbirth” by the pregnant woman or “physical injury to or death of” the fetus. The *434 pregnant woman’s injuries are distinct from those of the fetus, although either a miscarriage or stillbirth has the same result — death of the fetus.

 Sizemore v Smock, 430 Mich 283, 285, 296 n 24; 422 NW2d 666 (1988) (noting that common-law negligence principles do not permit recovery for the loss of a child’s society and companionship, whereas the wrongful-death statute extends a defendant’s liability to consortium damages).

 The dissent simply does not address whether the language of 2005 PA 270 justifies retroactive application of MCL 600.2922, as amended by 2005 PA 270. Finding that the legislative history supports the dissent’s position, the dissent chooses to ignore the dispositive statutory text.

 Johnson I, 290 Mich App at 273.

 Dolan v Continental Airlines/Continental Express, 454 Mich 373, 380; 563 NW2d 23 (1997).

 Wade v Dep’t of Corrections, 439 Mich 158, 162-163; 483 NW2d 26 (1992).

 Id. at 163.

 Wesche v Mecosta Co Rd Comm, 480 Mich 75, 83; 746 NW2d 847 (2008).

 Krohn v Home-Owners Ins Co, 490 Mich 145, 156-157; 802 NW2d 281 (2011), citing Veenstra v Washtenaw Country Club, 466 Mich 155, 160; 645 NW2d 643 (2002), in turn citing MCL 8.3a.

 Griffith v State Farm Mut Auto Ins Co, 472 Mich 521, 526; 697 NW2d 895 (2005).

 Random House Webster’s College Dictionary (2001).

 Black’s Law Dictionary (9th ed), pp 337, 1751.

 Id. at 28.

 Id. at 1134 (emphasis added).

 Id. at 1135.

 The Legislature has specifically addressed liability for acts and omissions in numerous statutes. See, e.g., MCL 3.751, art 7, § a(9) (concerning liability for acts or omissions for those involved in the transport of radioactive waste); MCL 41.711a (eliminating liability for good-faith acts or omissions of emergency personal when rendering care at the scene of an emergency); MCL 52.205(7) (concerning liability for acts or omissions of medical examiners); MCL 333.18826 (concerning liability for acts or omissions of veterinarians and veterinary technicians); MCL 600.2962 (concerning liability for acts or omissions of certified public accountants); MCL 600.5838a(2) (providing that a medical malpractice action generally accrues at time of the act or omission claimed).

 People v Thomas, 438 Mich 448; 475 NW2d 288 (1991).

 Id. at 450-451.

 Id. at 454.

 Id. at 455 (emphasis added).

 Id. (Cavanagh, C.J.); id. at 458-459 (Boyle, J., concurring).

 Plaintiffs’ original complaint alleges that Candice “asked [Pastoriza] to place a cerclage, but he did not do so.” It also alleges that Pastoriza “fail[ed] to perform a cerclage,” hut it says nothing about his “refusing” to perform a cerclage. Indeed, it was not until plaintiffs’ third amended complaint, filed after the Court of Appeals rendered its decision, that they alleged that Pastoriza “refused” to perform the procedure.

 Id. at 455.

 Post at 444.

 Again, this opinion does not affect Candice’s separate medical malpractice claim.