*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

BRIAN ZEZULA,

        Plaintiff-Appellee,

v

NINA BROWN and DTE ENERGY COMPANY,

        Defendants,

and

KALTZ EXCAVATING COMPANY INC.,

        Defendant-Appellee,

and

INDEPENDENCE TOWNSHIP OF OAKLAND COUNTY,

        Defendant-Appellant.

FOR PUBLICATION
March 11, 2025
12:02 PM

No. 368261
Oakland Circuit Court
LC No. 22-197937-NZ

Before: BOONSTRA, P.J., and K. F. KELLY and YOUNG, JJ.

BOONSTRA, P.J. (*dissenting*).

I respectfully dissent. It is the role of the Legislature, and not of this Court, to enact exceptions to governmental immunity. See *State Farm Fire & Cas Co v. Corby Energy Services, Inc*, 271 Mich App 480, 485; 711 NW2d 906 (2006). The majority errs, in my view, by misinterpreting the scope of our Legislature's actions, by failing to interpret those actions narrowly as is required, by instead reading into the law what it describes as a "broad exception to governmental immunity for alleged violations of the [MISS DIG underground facility damage prevention and safety act, MCL 460.721 *et seq.* (MISS DIG act)]," and, by doing so, failing to properly defer to the Legislature on matters within its purview. And, in my judgment, the majority also errs by finding potentially viable a proffered claim under the sewage-disposal-system-event exception to governmental immunity.

As the majority recognizes, "governmental agencies, with a few exceptions, are generally statutorily immune from tort liability." *Rowland v Washtenaw County Rd Comm'n*, 477 Mich 197, 203; 731 NW2d 41 (2007). "[T]he immunity provided by the [governmental tort liability act, MCL 691.1401 *et seq*. (GTLA)] is broad and its exceptions are to be narrowly construed . . . ." *State Farm Fire & Cas Co v Corby Energy Servs, Inc*, 271 Mich App 480, 485; 722 NW2d 906 (2006). The established "statutory exceptions to the governmental immunity provided to the state and its agencies are the highway exception, MCL 691.1402; the motor-vehicle exception, MCL 691.1405; the public-building exception, MCL 691.1406; the proprietary-function exception, MCL 691.1413; the governmental-hospital exception, MCL 691.1407(4); and the sewage-disposal-system-event exception, MCL 691.1417(2) and (3)." *Odom v Wayne County*, 482 Mich 459, 478 n 62; 760 NW2d 217 (2008) (citation omitted).

## I. MISS DIG ACT LIMITED EXCEPTION TO GOVERNMENTAL IMMUNITY

In 2006, this Court held in *State Farm* that "[b]ecause the immunity provided by the GTLA is broad and its exceptions are to be narrowly construed . . . the MISS-DIG act does not waive or abrogate the immunity provided by the GTLA, either expressly or by necessary inference from the statute." *State Farm*, 271 Mich App at 491. Eight years later, in 2014, the Legislature amended the GTLA to provide that "[t]he immunity provided by [the GTLA] does not apply to liability of a governmental agency under the [MISS DIG act]." MCL 691.1407(7), as amended 2013 PA 173. Additionally, the Legislature amended the MISS DIG act in certain respects, as I will describe.

The principal question in this case is whether or to what extent the Legislature has enacted an exception to governmental immunity for violations of the MISS DIG act. The majority concludes that the Legislature enacted a "broad exception," contending that it "need look no further" than the simple fact that the Legislature used the word "liability" in MCL 691.1407(7) of the GTLA. I conclude that the Legislature did not enact the "broad exception" the majority endorses. It instead enacted a much more limited exception that allows only for complaints against governmental agencies to be filed with the Michigan Public Service Commission (MPSC), and that authorizes the MPSC to impose fines and damage awards.

As noted, MCL 691.1407(7) provides:

> The immunity provided by this act does not apply to liability of a governmental agency under the MISS DIG underground facility damage prevention and safety act." [MCL 691.1407(7).]

Of course, the Legislature did not simply use the word "liability" in this provision, but used the phrase "liability . . . *under the MISS Dig [act]*." *Id*. (emphasis added). Simply put, that means that we must look to the MISS DIG act itself to see what liability arises under that act. More on that later.

First, I note that the majority relies on *In re Bradley Estate*, 494 Mich 385; 835 NW2d 545 (2013), to define the term "liability." Our Supreme Court in *Bradley Estate* broadly defined the term "tort liability," as used in MCL 691.1407(1), to encompass "all legal responsibility for civil wrongs, other than a breach of contract, for which a remedy may be obtained in the form of compensatory damages." *Bradley Estate*, 494 Mich at 385. Thus, the majority concludes, the term

"liability" means "all legal responsibility." Fair enough, I suppose. But it bears noting that the decision in *Bradley Estate* was *expansive* of governmental immunity, inasmuch as the Court in that case employed its definition of "tort liability" to *preclude* a claim for indemnification damages. The majority, by contrast, employs its definition to *restrict* governmental immunity by creating a *broad exception* to governmental immunity even though, as noted, "the immunity provided by the GTLA is broad and its exceptions are to be narrowly construed . . . ." *State Farm*, 271 Mich App at 485.

According to the majority, "[i]t follows [from the use of the word 'liability' in MCL 691.1407(7)] that the GTLA precludes any governmental immunity for 'all legal responsibility under MISS DIG.' " But the majority ignores the word "under" when it simply concludes: "Our statutory interpretation need go no further—the GTLA has a broad exception to immunity for violations of MISS DIG." The majority, despite making this pronouncement, does go on to delve a bit further into the statutory scheme, but in my judgment its analysis still falls short. The majority correctly notes that the MISS DIG act provides that:

> Except as provided in this section, this act does not affect the liability of a governmental agency for damages for tort or the application of [the GTLA]. [MCL 460.732(1).]

I agree entirely with the majority that "this means that, except as that section may elsewhere provide, the law of tort and the application of governmental immunity are unaffected by the MISS DIG act and apply as they otherwise would." In other words, a governmental agency continues to enjoy immunity from tort liability unless MCL 460.732 provides otherwise or one of the established exceptions to governmental immunity applies. But instead of examining this, the majority just circularly reaches back to its broad definition of "liability" to simplistically conclude, without any real analysis, that the GTLA "expressly precludes coverage for liability under MISS DIG."

As noted, the Legislature did not simply use the word "liability" in MCL 691.1407(7), but used the phrase "liability . . . *under the MISS DIG [act]*." MCL 691.1407(7) (emphasis added). A proper analysis of this issue therefore requires us to consider what the GTLA means by the phrase in its entirety.

The GTLA does not define the term "under," so it is appropriate to turn to a dictionary definition of the term. See *Epps v 4 Quarters Restoration LLC*, 498 Mich 518, 529; 872 NW2d 412 (2015). The most salient definitions of the preposition "under" as used in the phrase "under the MISS DIG [act]" are "subject to the authority or influence of" and "in accordance with." See *Random House Webster's College Dictionary* (2d ed), p 1422. Regarding the latter definition, *Random House Webster's College Dictionary* provides the example phrase "under the provisions of the law." *Id.*

Our caselaw is replete with examples of courts assessing whether and when parties are liable "under the provisions of" a law or a contract through analysis of the relevant statute or contractual provision. See, e.g., *Auto Owners Ins Co v Seils*, 310 Mich App 132; 871 NW2d 530 (2015) (liability under the dramshop act); *Johnson v Pastoriza*, 491 Mich 417; 818 NW2d 279 (2012) (liability under the fetal wrongful-death statute); *Elezovic v*

*Ford Motor Co*, 472 Mich 408; 697 NW2d 851 (2005) (liability under the Elliot-Larsen civil rights act); *Flanders Indus, Inc v Mich*, 203 Mich App 15; 512 NW2d 328 (1993) (liability under the Michigan Environmental Response Act, now recodified into the Natural Resources and Environmental Protection Act); *Chrysler Corp v Skyline Indus Servs Inc*, 448 Mich 113, 125; 528 NW2d 698 (1995) (rights and liabilities under a contract). It follows then that, in assessing the phrase "liability . . . *under the MISS DIG [act]*," MCL 691.1407(7), we must look to the MISS DIG act itself to ascertain whether, or to what extent, it provides for liability of a governmental agency for alleged violations of the MISS DIG act. And, as the majority correctly notes, the MISS DIG act expressly says that it does not affect the existing status of liabilities or immunities "except as provided in [MCL 460.732]." MCL 460.732(1).

MCL 460.732 provides, in pertinent part:

(2) A facility owner[1] or a facility operator may file a complaint with the commission[2] seeking a civil fine and, if applicable, damages from a governmental agency under this section for any violation of this act. [MCL 460.732(2).]

MCL 460.732(2) thus provides for the filing of a complaint with the MPSC seeking a civil fine and damages. It provides for no other liability of a governmental agency. It provides for no other exceptions to governmental immunity. It provides no mechanism for pursuing liability in a court of law, but only provides for a right of appeal (to the Ingham circuit court) from a commission order. MCL 460.732(4).

The majority acknowledges that the MPSC can receive complaints, adjudicate a government agency's liability under the MISS DIG act, and impose fines under MCL 460.732(2).[3] But the majority concludes that "it is likewise clear that these commission-based remedies are not the exclusive pathway to relief." For that proposition, the majority cites only to MCL 460.731(3), which provides that "[a] complaint filed under subsection (2) does not limit a person's right to bring a civil action to recover damages that person incurred arising out of a violation of the requirements of this act." *Id*.

---

[1] The MISS DIG act defines a "[f]acility owner" as "a person that owns a facility." MCL 460.723(q). It further defines a "[f]acility" or "underground facility" as "an underground or submerged conductor, pipe, or structure, including, but not limited to, a conduit, duct, line, pipe, wire, or other device and its appurtenances used to produce, store, transmit, or distribute a utility service, including communications, data, cable television, electricity, heat, natural or manufactured gas, oil, petroleum products, steam, sewage, video, water, and other similar substances, including environmental contaminates or hazardous waste." MCL 460.723(o).

[2] The MISS DIG act defines the "commission" as the MPSC. MCL 460.723(g).

[3] The majority appears to ignore that the MPSC can also hold a governmental agency liable for monetary damages under MCL 460.732(2).

Of course, the reference to "subsection (2)" in MCL 460.731(3) is not to the pertinent statutory section concerning governmental agencies, i.e., MCL 460.732(2), but is rather to MCL 460.731(2). And MCL 460.731(2) has nothing whatsoever to do with the liability of a governmental agency under the MISS DIG act. To the contrary, MCL 460.731(2) expressly makes clear that it relates *only* to complaints filed with the MPSC against a person "*other than a governmental agency*":

> Upon complaint filed with the commission or upon the commission's own motion, following notice and hearing, a person, *other than a governmental agency*, who violates any of the provisions of this act may be ordered to pay a civil fine of not more than $5,000.00 for each violation. . . . [MCL 460.731(2).]

Consequently, MCL 460.731(3) merely provides that the right of a party to file a complaint with the MPSC against a person *other than a governmental agency* does not limit the party's otherwise-available right to sue that (non-governmental) person for damages. Hence, in this case, plaintiff had a right to bring suit against defendant Kaltz Excavating Company, Inc., regardless of whether plaintiff filed a complaint with the MPSC. MCL 460.731(3).

By contrast, MCL 460.732(2) exclusively addresses the liability of a *governmental agency* under the MISS DIG act. As earlier noted, MCL 460.732(1) expressly provides that it does not affect liability or immunity "[e]xcept as provided in this section [i.e., MCL 460.732]," and MCL 460.732 provides *only* for potential fines and damages pursuant to an order of the *MPSC*. MCL 460.732(2), (3). Consequently, as applied to this case, plaintiff, as a "facility owner," may file a complaint with the MPSC seeking fines and damages from defendant Independence Township, but Independence Township, as a governmental agency, otherwise remains immune from liability under the GTLA.

There is one other section of the MISS DIG act that bears mentioning, although neither the parties nor the majority refers to it. MCL 460.728 states, in pertinent part:

> This act does not limit the right of an excavator, facility owner, or facility operator to seek legal relief and recovery of actual damages incurred and equitable relief in a civil action arising out of a violation of the requirements of this act, or to enforce the provisions of this act, nor shall this act determine the level of damages or injunctive relief in any such civil action. This section does not affect or limit the availability of any contractual or legal remedy that may be available to an excavator, facility owner, or facility operator under any contract to which they may be a party. [MCL 460.728][4]

---

[4] I note that "tort liability for purposes of the GTLA encompasses claims of noncontractual civil wrongs seeking compensatory damages, not those seeking declaratory or injunctive relief." *Eplee v City of Lansing*, 327 Mich App 635, 648; 935 NW2d 104 (2019). Consequently, neither the GTLA nor MCL 460.728 would affect or limit contractual claims or claims for declaratory, injunctive, or equitable relief. *Id.*

But MCL 460.728 does not operate to *authorize* the filing of civil actions for tort damages; it merely "does not limit," *id.*, any pre-existing right to file one. Consequently, *if* a right to file a civil action for tort damages arises elsewhere, then the MISS DIG act does not limit it. But again, MCL 460.732(1) expressly provides that it does not affect liability or immunity with respect to a governmental agency "[e]xcept as provided in this section [i.e., MCL 460.732]," and MCL 460.732 provides *only* for potential fines and damages pursuant to an order of the *MPSC*. MCL 460.732(2), (3).

The majority errs, in my judgment, by ignoring the limited nature of the governmental immunity exception created by MCL 460.732(2) (allowing for a complaint to be filed in the MPSC and for the MPSC to impose "a civil fine and, if applicable, damages," *id.*), by failing to interpret it narrowly, *State Farm*, 271 Mich App at 485, and by instead engrafting onto the law a broad and all-encompassing exception that our Legislature has not seen fit to adopt.[5] Accordingly, I respectfully dissent and would instead reverse the trial court's order denying defendant's motion for summary disposition with respect to plaintiff's negligence claim premised on alleged violations of the MISS DIG act.

## II. SEWAGE DISPOSAL SYSTEM EVENT EXCEPTION

I further respectfully dissent from the majority's affirmance of the trial court's order allowing plaintiff to amend his complaint for a third time to assert a claim under MCL 691.1417(3), the sewage-disposal-system-event exception to governmental immunity.

For a claim to fall within the sewage-disposal-system-event exception to governmental immunity, the GTLA requires, among other things, that "[t]he sewage disposal system had a defect." [MCL 691.1417(b).] A "defect" under the statute "means a construction, design, maintenance, operation, or repair defect." MCL 691.1416(e). And

> "Sewage disposal system" means all interceptor sewers, storm sewers, sanitary sewers, combined sanitary and storm sewers, sewage treatment plants, and all other plants, works, instrumentalities, and properties used or useful in connection with the collection, treatment, and disposal of sewage and industrial wastes, and includes a storm water drain system under the jurisdiction and control of a governmental agency. [MCL 691.1416(j).]

I note that although the majority concludes that there is a question of fact as to whether the sewage disposal system in this case had a defect, the trial court has already held, even before amendment of plaintiff's complaint to assert such a claim, that "[t]he Court finds that the sewage disposal system had a defect pursuant to MCL 691.1417(3)(b)." That, to me, is troubling in and of itself. But I also conclude that the proffered claim is not viable under the sewage-system-disposal-event exception to governmental immunity.

---

[5] If the Legislature wishes to create a broad exception to governmental immunity in relation to the MISS DIG act, it should say so with clarity.

As the majority notes, the trial court cited *State Farm* for the proposition that "the prevention of accidental damage to the City's water system through notification is within the scope of the water department's operations." *State Farm*, 271 Mich App at 484 n 2. The trial court concluded therefrom that "[b]ecause the failure to mark is an operation of Independence Township, the failure to mark is a defect." However, the Court in *State Farm* was not addressing whether there was a "defect" in a sewage disposal system, but was merely assessing whether the alleged conduct of the defendant city qualified as a "governmental function" under the GTLA. It is a stretch indeed to conclude from a brief statement in a footnote in *State Farm* that an alleged failure to mark is a "defect" of the sewage disposal system; yet it seems the trial court has already done so, and the majority now affirms that conclusion. I conclude that, under any reasonable interpretation, the failure to properly mark facilities as required by the MISS DIG act does not constitute a "defect" in the sewage disposal system and that the proffered amendment of plaintiff's complaint to assert a claim under MCL 691.1417(3) should have been denied.

For these reasons, I respectfully dissent and would instead reverse and remand for entry of an order granting summary disposition in favor of Independence Township.


/s/ Mark T. Boonstra